IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THREE LOWER COUNTIES              *
COMMUNITY HEALTH SERVICES, INC.   *
                                  * Civil Action WMN-10-2488
     v.                           *
                                  * Civil Action AMD-05-1280
MARYLAND DEPARTMENT OF HEALTH     *
AND MENTAL HYGIENE et al.         *

    *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Pending before the Court are three motions: Plaintiff's motion to amend the Court's ruling on Plaintiff's summary judgment motion, ECF No. 32 in WMN-10-2488; Plaintiff's Rule 70 motion to enforce judgment, ECF No. 45 in AMD-05-1280; and Plaintiff's motion to strike the declaration of Tim Forry, ECF No. 56 in WMN-10-2488. After several sur-replies, the motions have been briefed ad nauseam.[1] Upon consideration of the legal arguments submitted by the parties and the attendant facts, the Court finds the following: (1) no hearing is necessary to decide these motions, see Local Rule 105.6; (2) Plaintiff's motion to amend will be denied; (3) Plaintiff's motion to strike will be

---

[1] The parties have submitted a total of fifteen memoranda on the three motions sub judice, many of which were filed without permission from the Court. These are in addition to the briefs originally submitted on Plaintiff's motion for summary judgment. Given the novel posture of these cases, the Court will entertain these memoranda but only to the extent they add anything new to the parties' positions.

denied as moot; and (4) Plaintiff's Rule 70 motion to enforce judgment will be denied.

## I. BACKGROUND

In 2005, Plaintiff Three Lower Counties Community Health Services, Inc. (TLC) sued Defendant Maryland Department of Health and Mental Hygiene (the Department) alleging, inter alia, that the Department's Medicaid reimbursement procedures failed to comply with federal law insofar as they failed to provide (1) timely and fully compensatory supplementary reimbursement payments for services TLC provided to Medicaid-eligible patients, and (2) payments for certain medically-necessary emergency services provided to out-of-network Medicaid-eligible patients. See AMD-05-1280 (Three Lower Counties I). On appeal, the Fourth Circuit Court of Appeals ruled in favor of TLC on those two issues. See Three Lower Counties Cmty. Health Servs., Inc. v. Maryland Dep't of Health & Mental Hygiene, 498 F.3d 294, 305-06 (4th Cir. 2007) (Three Lower Counties II). In 2008, in response to the Fourth Circuit's mandate, the District Court ordered the parties to reach an agreement wherein the Department would shift TLC to an alternative reimbursement system that did not suffer any statutory deficiencies. As discussed further below, the parties never reached an agreement sanctioned by the Court.

In 2010, TLC filed the instant lawsuit, this time alleging that the Department habitually failed to provide fully compensatory supplementary payments and payments for emergency services TLC rendered to out-of-network patients.[2]  See WMN-10-2488 (Three Lower Counties III).[3]  Before the close of discovery, TLC moved for summary judgment.  The Court granted TLC's motion in part and denied it in part.  In disposing of TLC's motion, the Court explained that, because TLC relied upon 42 U.S.C. § 1983 for a cause of action to vindicate its federal statutory rights, the Court could not award retroactive relief for any payments the Department allegedly failed to make in the past.  Moreover, the Court also found that the Department had proffered enough evidence to create a genuine dispute of material fact as to whether the Department provided fully compensatory supplementary payments to TLC.  As such, to the extent TLC would have been entitled to prospective relief, the Court found that TLC was not entitled to judgment as a matter of law.  Nevertheless, the Court also opined in dicta that a motion to enforce an order of the court entered in Three Lower Counties I under Federal Rule of Civil Procedure 70 would not encounter a

---

[2] A more complete recitation of the issues involved can be found in the Court's memorandum disposing of TLC's motion for summary judgment.  See ECF No. 25 in WMN-10-2488.

[3] Unless otherwise noted, all citations to Court filings in this case will refer to those filed in Three Lower Counties III.

3

bar to retroactive relief, at least insofar as the Rule 70 motion would seek to enforce court-ordered behavior from the date of a specific court order onward.

Upon the Court's disposition of TLC's summary judgment motion, TLC filed the instant motion to amend, in which it argues (1) that it seeks only prospective relief; and (2) alternatively, that retroactive relief is available under various theories of the case. Separately, TLC also filed its motion to enforce judgment under Rule 70 in <u>Three Lower Counties I</u>, along with a motion to consolidate <u>Three Lower Counties I</u> and <u>Three Lower Counties III</u>. The Court consolidated the cases, and the parties continued to brief Plaintiff's motions. In opposition to the Rule 70 motion, the Department submitted the declaration of Tim Forry, a certified public accountant, attesting that TLC's analysis of alleged payment shortfalls is inaccurate. In turn, TLC moved to strike the Forry Declaration.

## II. MOTION TO AMEND

TLC submits that its motion to amend is meant to "correct a clear error of law and prevent manifest injustice." ECF No. 32-1 at 2. Its first argument is that it seeks only prospective injunctive relief. Specifically, TLC states that it "seeks relief regarding Medicaid claims [the Department] currently possess and fails to make full and properly accounted payments [sic]." ECF No. 32-1 at 3-4. In short, the argument is that

4

TLC submitted claims for payment to the Department, and those claims are still outstanding at the Department, such that the Court can and should order the Department by injunction to pay the still-pending claims.[4]

This argument fails because the allegedly unpaid claims cannot conceivably be characterized as still pending. TLC complains of the Department's administration of the Prospective Payment System (PPS), in which TLC participated from 2001 until January 1, 2010, when TLC transitioned to the Alternative Payment System (APS). Taken literally, TLC's position would mean that claims submitted for services rendered as far back as 2001 would still be under review and pending at the Department. Yet, in nearly every quarter of the relevant time period, the Department sent TLC a letter detailing final reconciliation payment calculations.[5] These demonstrate that the Department made a final analysis of all claims it allegedly received and a final determination as to how much money it thought it owed. At this point, even under the Department's original regulations

---

[4] To be technically correct, TLC argues it submitted claims for payment to managed care organizations, which then forwarded unpaid portions of those claims to the Department. This is consistent with the procedure for reimbursement set forth under the Prospective Payment System detailed in the Court's earlier memorandum. See ECF No. 25 at 4-5.

[5] These letters are discussed in greater detail in the Court's earlier memorandum. See ECF No. 25 at 37.

5

requiring final reconciliation within a total of eighteen months of claim submission, which the Fourth Circuit later found to violate the Medicaid statute's four-month maximum in <u>Three Lower Counties II</u>, the Department would have made final determinations for all claims submitted under PPS.[6] For the same reasons, TLC does not allege ongoing statutory violations of the Prospective Payment System that could be remedied by an injunction.

TLC's second argument is that its action does not arise solely under 42 U.S.C. § 1983, such that retroactive relief is available under a separate theory.  Specifically, TLC submits that "[i]mplicit in the Complaint's reference to the Medicaid statute is the idea that TLC's Complaint is also predicated on the Supremacy clause and preemption of federal law." ECF No. 32-1 at 6.  It also argues that "[b]ecause this action was brought under the Medicaid Act (as opposed to being brought exclusively under § 1983), the Court can order 'retroactive' monetary relief." ECF No. 32-1 at 6.

---

[6] The Court stated in its earlier memorandum that "[a]s TLC no longer operates under the PPS system, it is unclear whether the Department continues to be engaged in any PPS claim processing that may be the subject of [prospective relief]." ECF No. 25 at 43.  For the reasons listed above, it is now clear that all such claim processing is complete. Moreover, the Department avers that TLC has received its final reconciliation payment for all claims submitted under the Prospective Payment System.  ECF No. 33 at 5.

Neither the Supremacy Clause of the United States Constitution, nor the Medicaid statute itself, 42 U.S.C. § 1396 et seq., provide an independent cause of action.  See Associated Builders & Contractors, Inc. Baltimore Metro. Chapter v. O'Connor, 75 F. Supp. 2d 440, 444 (D. Md. 1999) ("[T]here is no independent cause of action for Supremacy Clause violations."); Maryland Pest Control Ass'n. v. Montgomery Cnty., Md., 884 F.2d 160, 162-63 (4th Cir. 1989) (Supremacy Clause); Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 656-57 (4th Cir. 1989) ("There is no dispute that the Medicaid Act does not expressly confer a right of action on health care providers. The Supreme Court has held, however, that federal statutes may imply rights actionable under § 1983.")  Consequently, this argument also fails.[7]

TLC's last argument is that the remedial limits of Section 1983 do not apply to this case because Maryland is not the real party in interest and the relief requested will have no effect on the Maryland state treasury.  In short, TLC's argument

---

[7] TLC cites Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644 (9th Cir. 2009), in support of its Supremacy Clause argument.  That case is inapposite insofar as the Independent Living plaintiffs did not rely exclusively upon the Medicaid statute or the Supremacy Clause for a cause of action, as TLC appears to argue.  Rather, the plaintiffs in that case filed a petition for a writ of mandamus in state court, and the court had jurisdiction as such.  That case was then removed to federal court.  Id. at 649.  Here, TLC did not file this case as a mandamus action and has not made any argument to that effect.

7

proceeds as follows. In <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974), the Supreme Court explained that even when a state is not explicitly named as a party to a lawsuit, "[w]hen the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest." <u>Id.</u> at 663 (citing <u>Ford Motor Co. v. Dep't of Treasury</u>, 323 U.S. 459, 464 (1945)). In such cases, the state is immune from suits seeking retroactive relief by operation of the Eleventh Amendment. Here, however, TLC does not seek any money from the State of Maryland. Rather, TLC seeks purely federal grant money allocated to it under Section 330 of the Public Health Act. Congress intended Section 330 funds to flow directly from the federal government to health care providers to cover funding gaps between the cost of services rendered and the amounts recovered via Medicaid. Thus, Congress specifically intended federal Section 330 funds to bypass state coffers where the funds might be improperly diverted to subsidize the state's Medicaid program. Consequently, a state has no legal entitlement to Section 330 funds regardless of whether the funds flow through the state for practical disbursement purposes. In this case, by not fully reimbursing TLC for services rendered, Maryland has improperly misappropriated purely federal funds allocated directly to TLC. Because Maryland never had any legal right to the Section 330 funds, any judgment meant to compel

payment of such funds would not have any impact on the Maryland state treasury. Consequently, the Eleventh Amendment does not prevent TLC from obtaining retroactive relief, or so claims TLC.

Though novel, TLC's theory misses the point. In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court unambiguously held that, when enacting Section 1983, Congress did not intend to abrogate the states' sovereign immunity and subject them to liability in lawsuits filed in state court under Section 1983. Recognizing that although "the scope of the Eleventh Amendment and the scope of § 1983" are "separate issues," the Supreme Court nevertheless explained that the scope of the Eleventh Amendment informed its reading of Congress' intent with respect to the scope of Section 1983. Id. at 66. Previously, the Supreme Court had held that Congress had no intention of "disturb[ing] the States' Eleventh Amendment immunity" when it passed Section 1983, id. at 66 (citing Quern v. Jordan, 440 U.S. 332, 341 (1979)), such that in Will, the Supreme Court then explained:

> Given that the principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept [the] argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.

Id. at 66.

Thus, Will is premised upon the Supreme Court's interpretation of the statute and the statute's Congressional intent. The unavailability of retroactive relief under Section 1983 stems from the statute itself and not from the Eleventh Amendment or from Maryland's sovereign immunity.[8] Regardless of whether the monies sought by TLC are exclusively federal grant funds, this is an action brought under Section 1983 against the State of Maryland, and this Court is bound by the Supreme Court's holding in Will. Section 1983 simply does not provide a cause of action in which TLC can obtain retroactive relief in this lawsuit.[9] Accordingly, TLC's motion to amend will be denied.

## III. MOTION TO ENFORCE JUDGMENT

In Three Lower Counties II, the Fourth Circuit held that TLC was entitled to "fully compensatory supplemental payments not less frequently than four months after Maryland has received

---

[8] The majority of the case law and argument TLC presents in support of this argument discusses the limits of Eleventh Amendment immunity. It is important to note that, as Three Lower Counties III was filed in Maryland state court, the Department waived its Eleventh Amendment immunity when it removed this action to federal court. To be clear, the threshold question is whether Section 1983 enables the relief sought; the question is not whether the Eleventh Amendment bars retroactive relief in actions against a state.

[9] TLC also argues that, upon correction of flaws in TLC's spreadsheet analysis previously identified by the Court, there is no genuine dispute of material fact. Because the Court finds TLC is not entitled to retroactive relief as a matter of law, it need not address the merits of TLC's factual allegations.

the claim for supplemental payment." 498 F.3d at 301 (emphasis in original). The Fourth Circuit issued its mandate to the District Court in Three Lower Counties I on September 19, 2007. Three Lower Counties I, ECF No. 38. On January 16, 2008, TLC filed a "Motion for Status Conference Following Remand from Fourth Circuit" to resolve the outstanding disputes. Three Lower Counties I, ECF No. 39. In that motion, TLC explained that the Fourth Circuit's holding presented two issues: (1) the Department's failure to provide timely and fully compensatory payments under the Prospective Payment System as required by 42 U.S.C. § 1396a(bb)(5); and (2) the Department's failure to ensure TLC received full compensation for emergency services provided to out-of-network patients.[10] Id. TLC then informed the Court that, to resolve the first issue, TLC was willing to transition from the Department's noncompliant Prospective Payment System to its Alternative Payment System. The Department had earlier represented that APS fully satisfied the Medicaid statute's requirements, and TLC apparently saw a transition to APS as the best solution to the dispute.[11]

---

[10] The second issue, payment for emergency services provided to out-of-network Medicaid patients, is not relevant to TLC's Rule 70 motion.

[11] TLC represents that it switched to APS only out of financial necessity. ECF No. 45-1 at 4 n.2. TLC's motivation for pursuing that particular remedy is legally irrelevant and, regardless, TLC never requested that the Department amend PPS to

11

Notably, TLC drafted and filed a proposed order to its motion for a status conference, in which it set forth the precise relief it requested, and the Department did not object to it. See Three Lower Counties I, ECF No. 39-1. Dating the order February 25, 2008, the Court adopted TLC's proposal without revision. Three Lower Counties I, ECF No. 40 (February 25th order). The order provided the following in relevant part:

> IT IS THEREFORE ORDERED that: [the Department] shall, within no more than twenty (20) days of the date of this Order, with the involvement of [TLC's] counsel and other representatives, issue a written proposal as to how it would transition [TLC] to the Alternative Payment System currently in effect for other Maryland Federally-qualified health centers ("FQHCs"). As part of such proposal, the parties are directed to confer in good faith as to mechanics for such a transition and the terms and conditions pursuant to which [TLC] could opt out of the Alternative Payment System if it continues to experience delays and difficulties in receiving full and timely supplemental payments. Such "opt out" would take place following sufficient notice and an opportunity to cure any payment deficiencies. However, if within twenty (20) days of this Order the parties cannot agree as to how the transition to the Alternative Payment System will be effected and the terms and condition of any opt out provision, [TLC's] counsel shall so notify the Court and the Court will hold a hearing to resolve the areas of dispute and to accord the full relief contemplated by the Fourth Circuit's decision and remand.

---

conform to statutory requirements in light of the Fourth Circuit's holding.

12

Id. In short, TLC's proposed solution to the dispute was to compel the Department to come up with a plan for transitioning TLC to the Alternative Payment System.[12]

On April 8, 2008, the Department filed a "Response to Order Entered February 25, 2008," in which it agreed to transition TLC to APS effective July 2008. Three Lower Counties I, ECF No. 41-2. Attached to the Department's response was a draft Memorandum of Agreement setting forth the mechanics of APS, which was to be signed by both parties. Three Lower Counties I, ECF No. 41-3. On June 30, 2008, TLC filed a response to the Department's proposal. Three Lower Counties I, ECF No. 43. TLC's only objection to the Department's proposal relating to the APS transition was that the draft Memorandum of Agreement did not adequately set forth TLC's right to withdraw from APS if APS proved problematic. Id. After setting forth additional objections not relevant to this motion, TLC closed its response with a request for a status conference to further address the remaining issues. Id.

---

[12] TLC argues the February 25th order also required the Department to conform PPS to federal requirements because, in introductory statements, the order provides that "the Court has no recourse other than to order [the Department] to bring its supplemental payment system into compliance with federal law." Three Lower Counties I, ECF No. 40. This language, however, is merely introductory. It appears above the operative sections of the order in which the Court sets forth the behavior compelled and, in any case, is not a command to the Department at all. The only activity required by the order that is relevant to this motion is set forth in the block quotation above.

What happened thereafter in Three Lower Counties I is unclear. The record contains no further filings from either party until TLC moved to consolidate Three Lower Counties I and Three Lower Counties III in April 2011. Three Lower Counties I, ECF No. 44. What is clear is that, effective January 2010, TLC obtained the relief it sought when it transitioned to the Alternative Payment System. Nevertheless, TLC now brings the instant motion pursuant to Rule 70 to enforce the judgment of Three Lower Counties I.[13]

Federal Rule of Civil Procedure 70(a) provides in part, "If a judgment requires a party . . . to perform any . . . specific act and the party fails to comply within the time specified, the court may order the act to be done." TLC's Rule 70 argument proceeds as follows. The Fourth Circuit held that TLC was entitled to fully compensatory supplemental payments in Three

---

[13] In memoranda submitted in support of TLC's motion for summary judgment in Three Lower Counties III, TLC argued that the Department failed to comply with this Court's previous orders issued in Three Lower Counties I. When ruling upon that motion, the Court explained that 42 U.S.C. § 1983 did not enable retroactive relief even if the Department had failed to comply with the Court's earlier orders. Nonetheless, TLC's allegations regarding the Department's noncompliance with judicial orders piqued the Court's concern. Consequently, the Court explained that if TLC sought to enforce an order from Three Lower Counties I, the proper procedure was to file a motion in that case under Federal Civil Procedure Rule 70. The Court noted, however, that "it is not clear which Order entered in Three Lower Counties I TLC may seek to enforce with a Rule 70 motion." ECF No. 25 at 32 n.11. Notwithstanding the Court's reservations, TLC filed the instant motion.

14

Lower Counties II and issued its mandate to the District Court on September 19, 2007. In turn, on February 25, 2008, this Court granted TLC's proposed order that TLC submitted pursuant to the mandate. Thus, the Court ordered the Department to fully reimburse TLC for any claims TLC submitted after those dates. While the parties negotiated TLC's transition to APS, the Department continued to provide insufficient payments under PPS. Because the Department failed to provide such full payments, the Department violated the Court's order, and TLC is entitled to relief under Rule 70. In turn, the Court should compel the Department to comply with its earlier orders by compelling it to provide full reimbursement.

TLC's argument hinges on two assumptions: first, that the Court issued a "judgment" as contemplated by Rule 70 ordering the Department to provide fully compensatory supplemental payments; and, second, that the Department failed to comply with the Court's order. The first assumption, however, is false, and the validity of the second is uncertain.[14] Regarding the first assumption, the Federal Rules of Civil Procedure define

---

[14] In opposition to TLC's motion to enforce, the Department submitted the declaration of Tim Forry to refute TLC's analysis of alleged supplemental reimbursement underpayments. Forry's declaration and analysis bears on the factual question of whether the Department paid all claims TLC submitted. Because the Court finds as a matter of law that TLC's motion to enforce must be denied, it need not consider the factual merits of TLC's argument. Consequently, TLC's motion to strike the Forry declaration will be denied as moot.

15

"judgment" as "a decree and any other order from which an appeal lies." Fed. R. Civ. P. 54(a). The Fourth Circuit's mandate does not qualify as a "judgment" because, inter alia, it is not an appealable order. Even if it were a "judgment," the mandate did not order the Department to provide the payment TLC requests. Instead, the Fourth Circuit's holding was confined to the legal question of whether PPS conformed to federal requirements. That the Court of Appeals found PPS noncompliant does not mean it ordered the Department to provide a specific payment.

After the Fourth Circuit issued its mandate, the District Court only issued two more orders before the parties ceased pursuing the Court's oversight: the first on February 25, 2008, which was discussed above, and the second on April 9, 2008, which merely granted the Department's request for more time to file a late document. The latter is irrelevant, while the former, which was drafted by TLC, only required the Department to propose a means of transitioning TLC from PPS to APS. TLC never asked the Court to order the Department to provide fully compensatory supplemental payments under PPS, and the Court never did so.

As the February 25th order was unopposed, not dispositive of any issue, and largely procedural, there is nothing in it that a party could appeal. In turn, it is not a judgment as

16

contemplated by Rules 54 and 70.  Moreover, to the extent that the order compelled certain behavior by requiring the Department to submit a plan to transition TLC to APS, the Department fully complied with its obligations.  See Three Lower Counties I, ECF No. 41.  Even if the Court broadly construed the order as one compelling the Department to transition TLC to APS, which it does not do, the Court can find no fault in the Department's actions vis-à-vis the order.  Though it did so later than the July 2008 date announced in previous Court filings, TLC transitioned to APS in January 2010 and, in doing so, secured the relief it sought at the end of Three Lower Counties I.  In short, there is no order compelling the payments TLC claims, no judgment enforceable via Rule 70, and no failure by the Department to comply with the Court's direction.  Accordingly, TLC's motion to enforce will be denied.

## IV. CONCLUSION

As outlined in the Court's memorandum on TLC's summary judgment motion, this action presented two issues.  The Court already granted summary judgment in favor of TLC on the issue of reimbursement for certain emergency services, but the Court also denied summary judgment with respect to the supplemental payments issue.  After the Court denied summary judgment, that issue remained viable only to the extent the Department was still engaged in PPS claims processing.  Because it is now clear

that the Department has ceased all activity related to the defunct Prospective Payment System, that issue is moot. Moreover, for the reasons set forth above, TLC's motions to amend and to enforce judgment will be denied. There are no remaining disputes in this litigation, and the Court will issue judgment in favor of TLC on the emergency services dispute and in favor of the Department on the supplemental payments dispute. The Court will issue a separate order to that effect.

```
                        _____/s/_____
                        William M. Nickerson
                        Senior United States District Judge
```

August 23, 2011